UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

STEVEN LIMEHOUSE,

        Petitioner,

        v.                            Case No. 09-C-0071

MICHAEL THURMER,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DISMISSING CASE, AND DENYING CERTIFICATE OF APPEALABILITY

Steven Limehouse filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting two grounds for relief. Thereafter, he amended his petition and this court ordered an answer. After respondent, Michael Thurmer, filed his answer, Limehouse dropped one ground for relief. His sole claim is that he was denied due process and equal protection of the law when the state courts refused to apply *State v. Dubose*, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, to his case on collateral review. After the granting of several motions to expand the record, for extensions of time for briefing, and for supplemental briefs, the case is ready for decision. For the following reasons the petition will be denied.

## BACKGROUND

A.    Factual Background

On January 6, 2002, at approximately 3:00 a.m., a man entered the Speedway SuperAmerica gas station at 369 East Oklahoma Avenue, in Milwaukee, Wisconsin. (Doc. 17 Ex. B at 7 & App. at 19.) Andrew Bittner tended the gas station while a coworker

cleaned the gas pumps. (*Id.* Ex. B, App. at 35.) The individual entering the gas station was described as "a black male in his 40's, approximately 5'10"-6', 170 Lbs., with a bald head, wearing a beige spring type jacket." (*Id.*) The man shielded his face with his hand and told Bittner to "'calmly take the money out of the register.'" (*Id.* at 34–35.) When Bittner did not comply, the man said, "'Do I have to shoot you?'" (*Id.* at 34.) At no point did Bittner observe a firearm. (*Id.* at 35.) Bittner gave the man all the money from the register and the man walked out of the store toward his vehicle. (*Id.* at 35–36.) Bittner described the vehicle as a red, two-door Bronco or Blazer (*id.* at 35); his coworker described the vehicle as "an older model, possible Bronco," that was red and "beat up" (*id.* at 36). (*See also* Doc. 17 Ex. B at 7.)

As the robber fled, Officer Milford Adams pulled into the gas station parking lot. (*Id.* at 35.) Adams observed a man running out the front door of the gas station "with an urgent look on his face," waving his arms and pointing to a red truck as it pulled out of the lot and onto Oklahoma Avenue. (*Id.* at 33.) (It is unclear but ultimately irrelevant whether Bittner also shouted "we got robbed.")

Security camera footage from the gas station corroborates the above description of the incident. (Doc. 17 Ex. B, App. at 36).

Adams, in a marked police car, pursued the vehicle, with lights and siren activated. (Doc. 17 Ex. B, App. at 24:2–5, 8–10.) The red truck continued along Oklahoma and ran a red light. (*Id.* at 24:24–25:7, 33.) Other officers joined Adams and pursued the red truck at speeds of approximately sixty to seventy miles per hour. (*Id.* at 25:13–26:24.) The red truck struck a fire hydrant at the northeast corner of Lincoln Avenue at Fourth Street,

backed off the curb and continued on Fourth Street. (*Id*. at 26:10–17, 27:15–16). It turned northbound on I-94/43 and continued to the North Avenue exit. (*Id*. at 28:4–23.) The truck stopped abruptly near Sixth Street on West Garfield Avenue and the driver, wearing a light colored jacket, exited the vehicle, jumped a fence, and, after a short foot chase, ran through the unlocked front door of a home. (*Id*. at 29:21–24, 30:1–31:12). Police ordered the man from the house and took him into custody; no weapon was recovered. (*Id*. at 33.) The man arrested was petitioner, Steven Limehouse. (*See* Doc. 17 Ex. B at 7.)

Bittner was interviewed at the gas station by police investigators approximately ten minutes after the incident; he said he thought he could identify the robber if he saw him in a lineup. (Doc. 17 Ex. B, App. at 35.) Rather than arranging a lineup, the police conducted a showup identification by Bittner at the scene of Limehouse's arrest. (*Id*. at 7.) Upon passing the vehicle that Limehouse had abandoned, Bittner "recognized it as the same reddish blazer vehicle." (*Id*. at 21:10–11). Limehouse was taken out of a police squad and made to face the vehicle Bittner occupied some ten feet away. (*Id*. at 7.) The police removed Limehouse's handcuffs and shone a light in his face. (*Id*.) Bittner then identified Limehouse as the man who robbed him. (*See id.*) The following day, Bittner again identified Limehouse in a lineup. (*Id*.)

After the showup identification by Bittner, police detectives realized that Limehouse's vehicle and person matched the description of an armed robber of a Wendy's restaurant. (Doc. 33 at 4.) That robbery was witnessed by Theus Matthews, who observed Limehouse at close range, picked Limehouse during a "constitutionally antiseptic police lineup," and positively identified Limehouse in court at trial. (Doc. 17 Ex. C at 20.)

Limehouse's trial counsel moved to suppress Bittner's showup identification and any subsequent or in-court identification on the ground that the showup was unduly suggestive, unreliable, and conducted in violation of Limehouse's constitutional rights. (Doc. 17, Ex. B, App. at 6). The trial court denied the suppression motion without a hearing. (*Id*. at 13:21–24, 15:10–13.)

Bittner's identification of Limehouse was presented at trial in Milwaukee County Circuit Court. Limehouse was convicted of two counts of armed robbery by threat of force and one count of fleeing from a police officer in violation of Wis. Stat. §§ 943.32(1)(b) and 346.04(3). (*Id*. Ex. A.) In January 2003, he was sentenced to a prison term of twenty-four years and nine months, followed by thirteen years and three months of extended supervision. (*Id.*)

B.. Procedural Background

Proceeding pro se, Limehouse moved for postconviction relief (which was denied) and then appealed based on a claim of ineffective assistance of trial counsel. (Doc 17 Ex. E at i.) Among other things, Limehouse argued that the initial pursuit of his vehicle was not prompted by reasonable suspicion, and, as a result, his seizure was illegal, the showup was illegal, and the fruits of his arrest, including the in-court identifications by witnesses, were poisoned and inadmissible. (*See generally id., passim.*) Limehouse argued under *Terry v. Ohio*, 392 U.S. 1, 27 (1968), that Adams's initial pursuit was improper because Adams's actions were not supported by reasonable suspicion. (Doc. 17 Ex. E at 36–37.) Limehouse identified illegally seized evidence resulting from the "improper chase" as "the in court and out of court identification of Limehouse by witnesses, . . . photos of Limehouse

participating in a line-up or show-up, . . . photos of Limehouse's vehicle and an identification show-up report." (Doc. 17 Ex. E at 39–40.) He argued that trial counsel was ineffective for failing to keep this evidence out of his trial.

The Wisconsin Court of Appeals affirmed on October 13, 2005, finding that Limehouse's counsel was not ineffective. (Doc. 1, 10/13/05 Op. & Order Wis. Ct. Appeals at 1.) The court determined that the discrepancy between the incident report and Bittner's testimony would have been inadequate to dismiss the criminal complaint had counsel so moved. (*Id*. at 3.) Furthermore, that Bittner drew the officer's attention and pointed to a fleeing vehicle was sufficient to give the officer reasonable suspicion to pursue Limehouse. (*Id*.) Therefore, had Limehouse's counsel moved to suppress all evidence arising from his search and seizure, such a motion would have been properly denied. (*Id*.)

Limehouse moved for reconsideration, but the court of appeals denied his motion. (Doc. 1, 11/15/05 Order Wis. Ct. Appeals.) The Supreme Court of Wisconsin denied Limehouse's petition for review on March 15, 2006, and Limehouse's direct appeal concluded.

Limehouse's reply brief supporting his direct appeal to the Wisconsin Court of Appeals was filed on June 16, 2005. (Doc. 33 at 5; Doc. 44 Ex. 2 at 3; *see* Doc. 17 Ex. G.) On July 14, 2005, the Supreme Court of Wisconsin issued its decision in *State v. Dubose*, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, adopting a new standard in Wisconsin regarding showups:

> [E]vidence obtained from an out-of-court showup is inherently suggestive and will not be admissible unless, based on the totality of the circumstances, the procedure was necessary. A showup will not be necessary, however, unless the police lacked probable cause to make an arrest or, as a result of

other exigent circumstances, could not have conducted a lineup or photo array. A line-up or photo array is generally fairer than a showup, because it distributes the probability of identification among the number of persons arrayed, thus reducing the risk of a misidentification.

2005 WI 126, ¶ 33. *Dubose* issued one month after Limehouse had filed his reply brief in the court of appeals but three months before the court of appeals issued its decision on Limehouse's direct appeal.

Between the filing of his reply brief and the Wisconsin Court of Appeals's decision on direct review, Limehouse submitted no request to the court of appeals for supplemental briefing based on *Dubose* or request for permission to add any argument about the suggestiveness of the showup. Nor did he mention *Dubose* in his motion for reconsideration to the Wisconsin Court of Appeals or in his petition for review by the Supreme Court of Wisconsin. Thus, at no point on direct appeal did he argue that the showup violated his rights because it was unduly suggestive and unreliable.

Subsequent to his unsuccessful direct appeal, Limehouse filed a postconviction motion under Wis. Stat. § 974.06, seeking a new trial so the trial court could consider *Dubose*. (*See* Doc. 17 Ex. B at 6.) The trial court denied the motion, stating that Limehouse "could have asked the Court of Appeals to remand the case after *Dubose* was decided while his direct appeal was pending. Because he did not, he waived the issue. It cannot be raised on collateral attack under section 974.06, Stats., after his direct appeal expires." (*Id.*, App. at 17.) Limehouse's motion for reconsideration was denied as well. (*Id.* at 18.) On appeal from denial of his postconviction motion, Limehouse argued (1) that the trial court should have considered whether his argument passed muster under *State v. Escalona-Naranjo*, 185 Wis. 2d 168 (1994), and (2) that the showup violated *Dubose*.

6

(Doc. 17, Ex. B at i–ii.)  In other words, for the first time on collateral review Limehouse argued for the application of *Dubose* to his case.

The Wisconsin Court of Appeals affirmed the denial of the § 974.06 motion for two reasons.  First, the court discussed whether *Dubose* could apply retroactively in cases on collateral review and found that it could not.  (Doc. 1, 1/15/08 Dec'n of Wis. Ct. Appeals ¶ 4.)  The appeals court noted according to Wisconsin's adoption of the federal rule set forth in *Teague v. Lane*, 489 U.S. 288 (1989), new criminal law will generally not apply retroactively on collateral review, but will apply only to new cases and cases pending on direct appeal.  (Doc. 1, 1/15/08 Dec'n Wis. Ct. Appeals ¶ 4.)  However, new case law may be applied retroactively if it decriminalizes individual conduct or "'if it requires observance of those procedures that are implicit in the concept of ordered liberty.'"  (*Id.* (quoting *State v. Howard*, 211 Wis. 2d 269, 282, 564 N.W.2d 753 (1997)).)  The Wisconsin Court of Appeals found that Limehouse's case did not fit either exception, thus *Dubose* did not apply retroactively.  (Id. ¶¶ 4, 6.)

Second, the court cited *Escalona-Naranjo* and Limehouse's failure to raise the issues of *Dubose* or the suppression motion on direct appeal.  The court noted *Escalona-Naranjo*'s rule that a movant may present a new issue on collateral review only if he shows a "sufficient reason" for failing to raise it in a previous proceeding.  (Doc. 1, 1/15/08 Dec'n Wis. Ct. Appeals ¶¶ 1, 5–6.)

> ¶ 5     Limehouse did not request this court or the supreme court to consider *Dubose*'s applicability and seek to pursue the denial of his suppression motion while his direct appeal was pending. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185-86, 517 N.W.2d 157 (1994) (requiring a defendant seeking to initially raise an issue on collateral review to allege a "sufficient reason" for failing to previously raise that same issue on direct appeal). Limehouse's reason for failing to alert this court (or the supreme court while

his petition for review was pending) to *Dubose*'s potential applicability was that "[h]e did not foresee [*Dubose*'s] subsequent effect" (essentially because of his *pro se* status); however, he had affirmatively elected to proceed *pro se* on direct appeal; consequently, we could not have divined the applicability of the recent *Dubose* holding to Limehouse's appeal unless we had been affirmatively notified.[2]

¶ 6    Limehouse had several months to alert the appellate courts to *Dubose*'s potential applicability to his direct appeal, which was not decided or final until three and eight months respectively after the *Dubose* decision. His unawareness of *Dubose* is one of the risks he assumed when he elected to terminate his representation and proceed *pro se*. Limehouse's reason for failing to alert us or the supreme court to *Dubose*'s potential applicability to his direct appeal while it was pending, namely, his ignorance of *Dubose* because he elected to proceed *pro se*, is not sufficient to circumvent the general rule preventing retroactive application of a new rule on collateral review.

_____

[2] Although Limehouse had not raised the suppression issue in his direct appeal, *Dubose* would have arguably provided good cause to grant Limehouse leave to raise that issue and file supplemental briefing.

(Doc. 1, 1/15/08 Dec'n ¶¶ 5-6.)

Limehouse's petition for review as to his § 974.06 motion was denied. (Doc. 1 8/18/08 Order of Wis. Sup. Ct.) Thereafter, he commenced this case which respondent acknowledges as timely filed. (Doc. 15, ¶ 2.)

DISCUSSION

A petition seeking a writ of habeas corpus may not be granted on any claim adjudicated on the merits in state court unless the decision "was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court law or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual

determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Limehouse alleges that the state court decision was contrary to or involved an unreasonable application of law. A state court decision is "contrary to" Supreme Court law if the state court's conclusion is opposite from that of the Supreme Court on a question of law, or the state court's decision on materially indistinguishable facts was different from that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405–06, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court law if the state court identified the correct governing legal principle but applied that principle to the facts of the case unreasonably. *Id.* at 407–09, 413. A federal court analyzing the "unreasonable application" prong "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786, (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Habeas review by a federal court is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (citations omitted).

Limehouse says he was deprived of his rights to due process and equal protection of law and that the Wisconsin Court of Appeals identified the correct governing legal principle from Supreme Court precedent but unreasonably applied that principle when it found that *Dubose* did not apply in collateral proceedings to cases that were pending on direct appeal when the new rule was announced. (Doc. 7 Addendum E.) He

acknowledges that *Dubose*, as a new rule of *state* law, provides no basis for federal habeas relief. (Doc. 33 at 23 ("The Wisconsin Supreme Court was very clear that its decision in *Dubose* was grounded in the Wisconsin Constitution, and as such, the *Dubose* precedent . . . does not entitle Limehouse to relief in this Court.").) Instead, the gist of his argument is that the state committed a federal constitutional violation in failing to apply the new state law in Limehouse's case on collateral § 974.06 review. However, Limehouse's case fails for several reasons.

The first two reasons are procedural defaults. The procedural default doctrine ensures that before raising claims in federal court, state prisoners have given the state courts sufficient opportunity to decide their claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 853, 119 S. Ct. 1728 (1999) (Stevens, J., dissenting) (summarizing the interplay between exhaustion and procedural default; discussion approved by the majority at 847–48). When a prisoner has deprived the state court of such an opportunity by failing to use adequate state remedies, he has procedurally defaulted those claims. *Id.* Procedural default occurs (1) when a petition to the federal court includes new claims that the petitioner failed to raise at the state level, *Bowles v. Berge*, 999 F. Supp. 1247, 1252 (E.D Wis. 1998); *see Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988), or (2) where the state court declined to address a claim because the petitioner failed to comply with a state procedural requirement, *Bowles*, 999 F. Supp. at 1252; *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Generally, failure to comply with the procedural rules of a state furnishes an independent and adequate state ground that blocks federal habeas review of an issue. *See Coleman*, 501 U.S. at 729-30. The rule holds true when a state court has expressly

declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement. *Id.* at 730.

This court may examine the merits of a procedurally defaulted claim only if the petitioner (1) demonstrates cause for his procedural error and prejudice as a result, or (2) shows that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *accord Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). "Cause" must be "*external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 722. Ignorance or inadvertence is not "cause." *See id.* A fundamental miscarriage of justice is rare; it occurs only where the petitioner is actually innocent of the crime for which he is imprisoned. *See Schlup v. Delo*, 513 U.S. 298, 321-33 (1995); *Gomez*, 350 F.3d at 679.

Both types of procedural default occurred in this case, and Limehouse fails to establish cause or a fundamental miscarriage of justice. First, Limehouse failed to raise any due process or equal protection arguments in the Wisconsin courts. On the other hand, he contends that respondent failed to assert this particular procedural default in his answer, thereby waiving it. However, the answer sufficiently raises the affirmative defense. In his answer respondent stated that he "AFFIRMATIVELY ALLEGE[D] with respect to both grounds for relief, that the petition must be DISMISSED WITH PREJUDICE for procedural default." (Doc. 15 ¶ 4.) Although respondent thereafter specifically discussed only the second basis for procedural default (discussed below)—i.e., the Wisconsin Court of Appeals' reliance on *Escalona-Naranjo* to bar Limehouse's retroactivity claim—the first sentence of paragraph four sufficiently put Limehouse on notice of a procedural default

defense, and respondent addressed this particular instance of procedural default in his brief. (Doc. 37 at 7-9.)

Limehouse did not argue to the Wisconsin Court of Appeals or to the Wisconsin Supreme Court that he was denied due process or equal protection regarding application of retroactivity and *Escalona-Naranjo* principles to his § 974.06 motion. (Doc. 17 Exs. B; Doc. 65 Ex. 3.) Instead, he discussed Wisconsin law regarding the application of *Dubose* to his case and whether *Escalona-Naranjo* was applied correctly. Nowhere in his state briefs did Limehouse address federal law regarding due process or equal protection, nor did he mention those phrases.[1]

Limehouse asserts that the state courts were sufficiently alerted of his due process and equal protection arguments because of his reliance on *Teague* and various state-law cases and argument that the state courts based their decisions on the wrong legal principle. Moreover, he submits that he "articulated his claim specifically enough to call to mind a specific constitutional right," and that the facts he presented on collateral review "were well within the mainstream of constitutional litigation." Even so Limehouse's argument is not persuasive. If he intended to assert due process or equal protection violations he should have used those terms and related law. And he does not establish any cause for his failure to mention federal due process or equal protection rights in his state-court direct and collateral proceedings.

Second, and importantly, the Wisconsin Court of Appeals expressly pointed to procedural error as the basis for affirming denial of Limehouse's § 974.06 motion. In

---

[1]In fact, he fails even to discuss due process or equal protection cases in the present proceedings. He discusses *Teague*, a case about retroactivity of federal constitutional law, but he does not mention any legal standards for due process or equal protection claims.

*Escalona-Naranjo*, 185 Wis. 2d at 181-82, the Supreme Court of Wisconsin held that issues not raised on direct appeal or in a postconviction motion before direct appeal are barred from later consideration in proceedings under Wis. Stat. § 974.06 in the absence of a "sufficient reason" for not having raised them previously. In denying Limehouse's § 974.06 motion the Wisconsin Court of Appeals invoked the procedural rule of *Escalona-Naranjo*. It held that Limehouse could and should have raised *Dubose* on direct appeal and that he failed to provide a sufficient reason for not doing so. The state court found that under state law Limehouse was barred from raising *Dubose* on collateral review; thus, it declined to address the merits of any *Dubose* argument.

Limehouse contends that the Wisconsin Court of Appeals was wrong in its application of *Escalona-Naranjo*. He points to a footnote in *Escalona-Naranjo* that discussed the "sufficient reason" standard as satisfied when "the effect of subsequent law was not foreseen at the time of the appeal." 185 Wis. 2d at 182 n.11. But the case described in the footnote was one where at the time direct appeal concluded the state supreme court had not yet issued its rule-changing decision—in other words, a case unlike Limehouse's. Limehouse cites *State v. Dodd*, 2006 WI App 101, 2006 WL 851694, as a similar case in which *Dubose* was applied and the matter was remanded to the trial court for a hearing regarding the showup. But *Dodd* was on direct appeal and *Escalona-Naranjo* did not apply. And the footnote in *State v. Xiong*, 2006 WI App 78, ¶ 4 n.2, 2006 WL 618808, ¶ 4 n.2, suggesting that a new rule of criminal procedure would apply to Xiong's case on collateral review because the rule was decided before Xiong's case was complete, is unpersuasive. *Xiong* is an unpublished case decided by a different panel of the Wisconsin Court of Appeals than decided Limehouse's § 974.06 appeal, with no

precedential value. That lone, unpersuasive footnote does not establish that the application and interpretation of *Escalona-Naranjo* in Limehouse's case was incorrect.

Limehouse provides no cause for the default expressly referenced by the Wisconsin Court of Appeals. He suggests that his pro se status and the fact that *Dubose* was decided after briefing (yet during the pendency of his direct appeal) each constitute cause. But neither is adequate cause (just like neither was a "sufficient reason" to avoid application of *Escalona-Naranjo*).

Limehouse misreads the state's position in the § 974.06 proceedings as a stipulation that he has "sufficient reason" for his failure to raise the *Dubose* issue on direct appeal. (Doc. 33 at 33). Rather, the state was simply characterizing "[t]he only 'sufficient reason' offered by Limehouse to excuse his failure," not admitting that the only reason given was indeed sufficient. (*Id.*) As addressed by the Wisconsin Court of Appeals, Limehouse's "belated realization" of *Dubose's* applicability due to his pro se status is not an external cause of his procedural error. (Doc 1, 1/15/08 Dec'n Wis. Ct. Appeals ¶¶ 1, 2, 5–6.) At no point does Limehouse offer an external cause other than the timing of the announcement of the *Dubose* decision in relation to his progress in his direct appeal.

Like the Wisconsin Court of Appeals in its decision that Limehouse failed to show a "sufficient reason," this court finds that Limehouse fails to show "cause." His mistaken belief that once briefing on the direct appeal was complete he was unable to present a *Dubose* argument to the Wisconsin Court of Appeals does not constitute cause to excuse his default. The Wisconsin Court of Appeals found that even though briefing was complete Limehouse could have, and should have, notified that court of the applicability of *Dubose* to his case; that Limehouse could have sought supplemental briefing and permission to

raise the showup issue from the Wisconsin Court of Appeals; and that he could have, and should have, raised the issue in his petition to the Supreme Court of Wisconsin.

Additionally, Limehouse has not established any fundamental miscarriage of justice that will excuse either procedural default. He suggests no evidence tending to exonerate him for the armed robberies, but rather asserts improper application of state procedural rules. The showup, even if suggestive, in no way affected the identification in the Wendy's robbery. Moreover, the facts of the police pursuit of Limehouse's car from the gas station parking lot until custody, and the similarity of Limehouse's clothing to that of the gas station robber, make it impossible for Limehouse to satisfy the fundamental miscarriage of justice standard. Bittner described a distinctive tan jacket and red truck, both of which were observed on the security footage and recovered by police at Limehouse's arrest. Also, Adams testified to his pursuit of the red truck from the SuperAmerica parking lot to the final scene of Limehouse's arrest.

Two other bases for denying the pending § 2254 petition relate to Limehouse's misunderstandings regarding the law. Limehouse's argument is that the state courts misapplied *Griffith v. Kentucky*, 479 U.S. 314 (1987), and *Teague* because they failed to apply *Dubose* to his case on collateral review. In *Griffith*, the Supreme Court held that a new rule of criminal procedure applies retroactively to all cases pending on direct review or not yet final. 479 U.S. at 328. *Teague* held that unless they fall within one of two exceptions, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310.[2]

_____

[2]The Supreme Court of Wisconsin has adopted the retroactivity rule of *Teague*. *See State v. Lagundoye*, 2004 WI 4, ¶ 14, 268 Wis.2d 77, ¶ 14, 674 N.W.2d 526, ¶ 14.

Limehouse maintains that *Teague* does not apply because his case was pending on direct appeal when *Dubose* was announced. Consequently, *Teague*'s nonretroactivity rule is unnecessary and the rule of *Dubose* should apply to his case regardless of when he brings the issue to the court. Limehouse further argues that the issue of retroactivity should never have been broached because *Dubose* was decided before his case was final. Thus, he submits, the Wisconsin Court of Appeals acted contrary to or unreasonably applied Supreme Court law.

But Limehouse's entire premise is incorrect. As indicated in his briefs in this matter, Limehouse believes that because *Teague* discussed retroactivity of law and was issued only *after* the conclusion of his direct appeal, then law issued *during* the pendency of a direct appeal must be applicable on collateral review. But his logic is flawed; *Griffith* and *Teague* do not support his conclusion. Limehouse may be correct that the issuance of *Dubose* while his direct appeal was pending means *Teague* has no application whatsoever. And under *Griffith Dubose could have* applied while his direct appeal was pending. But neither *Griffith* nor *Teague* dictate that an appellant can sit on his rights during direct review and raise the issue later. In other words, neither Supreme Court case dictates that *Dubose* must apply to Limehouse's case *after* direct appeal concludes simply because *Dubose* was decided while his appeal was under consideration.

Notwithstanding *Griffith* and *Teague*, Limehouse had to meet Wisconsin's requirements for placing the issue before the state courts at the right time. And as the Wisconsin courts have stated, the right time was during his appeal, through supplemental briefing or a motion for reconsideration, rather than after direct appeal concluded. The fact that *Dubose* was decided during Limehouse's appeal does not mean he can raise the

issue whenever he wants at some later date. While Limehouse suggests that he could not have raised the issue because briefing was already complete, the Wisconsin courts have ruled otherwise.

Limehouse introduces snippets of federal law out of context. For example, he quotes the statement in *Liegakos v. Cooke*, 106 F.3d 1381, 1386 (7th Cir. 1997) (interpreting *Teague*) that "'only rules established before the conclusion of the direct appeal may be applied on collateral attack'" (Doc. 33 at 23–24) and deduces from this statement that rules established before the conclusion of direct appeal *must* be applied on collateral attack. But the statement in *Liegakos* dealt with a situation of a new rule established after direct review and is dicta, and the circuit court's interpretation of *Teague* cannot trump the holding of *Teague* itself.

Had Limehouse raised on direct appeal either *Dubose* or a challenge to the fairness of the showup, the Wisconsin Court of Appeals could have addressed *Dubose*'s application to his case under *Griffith*. However, he sat on the argument until it was too late, and as a consequence neither *Griffith* nor *Teague* mandates application of the new rule to Limehouse's case.

Finally, Limehouse's petition must be denied because at heart it does not present an issue of federal law. Wisconsin courts have decided that Limehouse did not raise his state-law claim at the time and place required under state law. No matter how unfair Limehouse believes that is, whether Wisconsin courts misapplied the state's retroactivity and default laws does not qualify as a violation of due process or equal protection. Limehouse is not entitled to habeas relief because in the end he does not present to this court any violation of federal law. Hence, his petition must be denied.

CERTIFICATE OF APPEALABILITY

An unsuccessful habeas petitioner has no right to appeal the denial of his petition. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003). Before a habeas petitioner may take an appeal to the Seventh Circuit, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 335-36. The district court should issue or deny a certificate of appealability when it enters the final order in a habeas case. Rule 11(a), Rules Governing § 2254 Cases.

A certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes a "substantial showing" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The certificate of appealability determination is not a second assessment of the merits. *See Miller-El*, 537 U.S. at 327, 336. Instead, the determination requires only a threshold inquiry into the debatability of the district court's decision—"an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. The petitioner need not demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003) ("[C]ertificates properly issue in many cases in which the prisoner will fail on full merits review."). Further, at the certificate of appealability stage, the court need not definitively determine how the statutory clear and convincing evidence and

unreasonableness standards apply, as such a determination delves into the substance of the appeal itself. *Miller-El*, 537 at 342. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.*

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); Rule 11(a), Rules Governing § 2254 Cases; *Davis*, 349 F.3d at 1028, 1029. If the court denies the request for a certificate of appealability, it must state its reasons. Fed. R. App. P. 22(b)(1).

When a district court dismisses a habeas petition based on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Section 2253 mandates that both showings be made before a certificate of appealability is granted. *Id.* at 485. The district court is allowed, and indeed encouraged, to proceed first to the procedural issue if its answer is more apparent from the record and arguments. *Id.*

> Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

*Id.* at 484.

Addressing the procedural showing first, the court believes the question of whether the petitioner's case should have been dismissed for procedural default does not deserve

to proceed further, nor does the court believe that the dismissal for procedural default would be debatable among jurists of reason reviewing the record of this case. The Wisconsin Court of Appeals held that Limehouse failed to provide a sufficient reason for not raising his *Dubose* argument on direct appeal; thus, he was prevented by *Escalona-Naranjo* from raising the issue on collateral review. And in this court Limehouse failed to establish cause for such default or that a fundamental miscarriage of justice would result if he was not allowed to proceed further. Moreover, as discussed above, on the merits Limehouse's arguments at heart involve an issue of state law rather than federal law.

CONCLUSION

Limehouse was convicted on evidence that included a showup identification by a victim of a robbery. The Wisconsin courts held that on direct appeal that he had the opportunity to challenge this identification based on a decision of the Supreme Court of Wisconsin, which issued shortly after briefing of the direct appeal was complete, but Limehouse failed to do so. Under Wisconsin law, as determined by Wisconsin courts, Limehouse was precluded from raising the issue on collateral appeal because his failure was not caused by any reason external to his own poor advocacy. Limehouse's due process and equal protection challenges were not presented to the state courts, and his arguments using *Griffith* and *Teague* are off-base. Limehouse has not shown cause to avoid his procedural defaults, and the refusal of this court to permit review of the merits of his case will not result in a fundamental miscarriage of justice. Moreover, the essence of Limehouse's contention is that the state courts misapplied state law, which is no basis for federal habeas relief. Therefore,

IT IS ORDERED that Limehouse's petition for a writ of habeas corpus is denied and this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 29th day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE